IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | | |
|---|---|---|
| PATRICIA DRESBACH, | ) | |
| | ) | |
| Plaintiff, | ) | 3:20-cv-00371 |
| | ) | |
| v. | ) | |
| | ) | |
| ALLIANCE CAS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

NOW COMES the plaintiff, PATRICIA DRESBACH, by and through her attorneys, SMITHMARCO, P.C., and for her Complaint against the defendant, ALLIANCE CAS, LLC, the plaintiff states as follows:

### I.   PRELIMINARY STATEMENT

1. This is an action for actual and statutory damages for violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. §1692, et seq.

### II.   JURISDICTION & VENUE

2. Jurisdiction arises under the FDCPA, 15 U.S.C. §1692 et seq., and pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1337.

3. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

4. The location of property that gave rise to the alleged debt is situated in this District, and the original creditor of the alleged debt is located in this District.

### III.     PARTIES

5. PATRICIA DRESBACH, (hereinafter, "Plaintiff") is an individual who currently resides in Milton, Kentucky. However, the alleged debt that gives rise to Plaintiff's claims occurred in Georgetown, Florida, County of Putnam.

6. The debt that Plaintiff was allegedly obligated to pay was a debt allegedly originally owed by Plaintiff to Georgetown Cove Property Owners Association, Inc. (hereinafter, "the Debt").

7. The Debt was for homeowner's association dues which was for the personal use of Plaintiff and/or used for household expenditure.

8. At all relevant times, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

9. ALLIANCE CAS, LLC, (hereinafter, "Defendant") is a business entity engaged in the collection of debt within the State of Florida. Defendant's principal place of business is located in Dania Beach, Florida. Defendant is incorporated in the State of Florida.

10. The principal purpose of Defendant's business is the collection of debts allegedly owed to third parties.

11. Defendant regularly collects, or attempts to collect, debts allegedly owed to third parties.

12. During the course of its efforts to collect debts allegedly owed to third parties, Defendant sends to alleged debtors bills, statements, and/or other correspondence via the mail and/or electronic mail and initiates contact with alleged debtors via various means of telecommunication, such as the telephone and facsimile.

13. At all relevant times, Defendant acted as a debt collector as that term is defined by 15 U.S.C. §1692a(6).

14. At all relevant times, Defendant acted through its duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

### IV. ALLEGATIONS

15. Plaintiff was married to William Hucks until his death on June 12, 2011.

16. Plaintiff avers that prior to his death, Plaintiff was coerced into co-signing on a property in Georgetown, Florida named Georgetown Cove.

17. After his death, on or about July of 2013 Plaintiff discontinued making any payments on the property. After that time, Plaintiff never made another payment toward the property or the homeowner's association. Plaintiff never returned to the property.

18. William Hucks' estate was administered through the Carroll County., Kentucky District Court, Probate Division, under case number 11-P-00068.

19. On October 1, 2014, Plaintiff obtained an order from the Carroll County District Court authorizing Plaintiff to abandon the real estate located in Florida – the Georgetown Cove property.

20. As of October 1, 2014, Plaintiff no longer had any interest in the Georgetown Cove property, and to date has not returned to said property nor made any payments for the property or toward the homeowners association.

21. Plaintiff has had no dealings whatsoever with any person or representative of Georgetown Cove, has not received a bill, nor any communication from the property since receiving a maintenance assessment fee statement for July 1, 2015 through June 30, 2016.

22. On November 25, 2019, Defendant sent correspondence addressed to Plaintiff and the deceased William Hucks.

23. The November 25, 2019 correspondence sent by Defendant to Plaintiff was an attempt to collect a debt.

24. The November 25, 2019 correspondence sent by Defendant to Plaintiff was sent via certified mail and registered mail.

25. The November 25, 2019 correspondence sent by Defendant to Plaintiff stated that Defendant was hired by the Georgetown Cove property Owners Association to collect two debts in the amount of $408.78 for the two properties Mr. Huck's purchased.

26. The November 25, 2019 correspondence sent by Defendant to Plaintiff provided that Plaintiff could dispute the debt within thirty (30) days of receipt of the letter, and can obtain validation of the debt if the Plaintiff sends her dispute in writing.

27. On December 2, 2019, Plaintiff sent written correspondence to Defendant in response to the November 25, 2019 correspondence from Defendant.

28. Defendant received Plaintiff's December 2, 2019 correspondence.

29. Plaintiff's December 2, 2019 correspondence advised Defendant that William Hucks had died in 2011.

30. Plaintiff's December 2, 2019 correspondence stated that she abandoned the property and had a court order to that effect.

31. Plaintiff's December 2, 2019 correspondence stated that William Hucks was violent abuser that coerced Plaintiff to co-sign on the Georgetown Cove property.

32. Plaintiff's December 2, 2019 correspondence stated that Plaintiff was ill and unable to work, she had no savings, all of her income was social security income, and she was unable to pay the fees.

33. Plaintiff's December 2, 2019 correspondence invited the association to take over the property.

34. Plaintiff's December 2, 2019 correspondence both overtly and by implication stated Plaintiff's intent not to pay the debt, and that she refuses to do so.

35. On January 3, 2020, Defendant again sent correspondence addressed to Plaintiff and the deceased Mr. Hucks via regular and certified mail.

36. Defendant's January 3, 2020 correspondence was an attempt to collect the debts.

37. Defendant's January 3, 2020 correspondence did not acknowledge receipt of Plaintiff's December 2, 2019 correspondence.

38. Defendant's January 3, 2020 correspondence now sought to collect $446.19 for each of the two debts from Plaintiff.

39. Defendant's January 3, 2020 correspondence again notified Plaintiff that she may dispute the debt within thirty (30) days of receipt of the correspondence, and if notice is sent in writing, Defendant will send validation of the debts to Plaintiff.

40. On January 21, 2020, Plaintiff sent another correspondence to Defendant in response to its letter dated January 3, 2020.

41. Plaintiff's January 21, 2020 correspondence again advised Defendant that Mr. Hucks died in 2011.

42. Plaintiff's January 21, 2020 correspondence again advised Defendant that she abandoned the property via court order in 2014.

43. Plaintiff's January 21, 2020 correspondence again advised Defendant that she signed for the property under duress of her abusive husband.

44. Plaintiff's January 21, 2020 correspondence again advised Defendant that she was ill and unable to work, she had no savings, and she was unable to pay any fees.

45. Plaintiff's January 21, 2020 correspondence again overtly and by implication advised Defendant that she had no intent to pay the debt and refused to pay the debts.

46. The message of Plaintiff's two correspondences were clear that she was unable to and would not pay the debt, such that further communication was not only unnecessary, but harassing, abusive, and unlawful under the Fair Debt Collection Practices Act.

47. Notwithstanding the above, on March 9, 2020, Defendant again sent correspondence addressed to Plaintiff and the deceased Mr. Hicks.

48. Defendant's March 9, 2020 correspondence was an attempt to collect a debt.

49. Defendant's March 9, 2020 correspondence now sought to collect $823.79 for each of the two debts, nearly twice the previous amounts.

50. Defendant's March 9, 2020 correspondence advised Plaintiff that it would continue to take further action to collect the debts unless Plaintiff paid the debts or called or emailed Defendant.

51. Defendant's conduct as describe above was harassing and abusive in that the natural consequence of Defendant's conduct was to cause stress and anxiety for Plaintiff, and the sense that no matter what steps she takes to rid herself of the horrors of her previous marriage, she will be followed by Defendant with a constantly escalating debt and monthly regular and certified letters.

52. The natural consequence of Defendant's conduct was to cause Plaintiff mental distress.

53. In its attempts to collect the debt allegedly owed by Plaintiff to Georgetown Cove Property Owners Association, Defendant violated the FDCPA, 15 U.S.C. §1692, in one or more of the following ways:

   a. Continued to communicate with the consumer in an effort to collect on the alleged debt despite the fact that the consumer notified the debt collector in writing that the consumer refused to pay the debt or that the consumer wished that the debt collector to cease further communication with the consumer in violation of 15 U.S.C. §1692c(c);

   b. Engaged in conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt in violation of 15 U.S.C. §1692d;

   c. Continued to attempt collection of the debt allegedly owed by the consumer despite having failed to mail to the consumer verification of the debt by the original creditor or the name and address of the original creditor in response to receiving a timely written notification from the consumer that the debt was disputed or notification that the consumer requests the name and address of the original creditor in violation of 15 U.S.C. §1692g(b);

   d. Was otherwise deceptive and failed to comply with the provisions of the FDCPA.

54. As a result of Defendant's violations as aforesaid, Plaintiff has suffered, and continues to suffer, personal humiliation, embarrassment, mental anguish and emotional distress.

## V.   JURY DEMAND

55. Plaintiff hereby demands a trial by jury on all issues so triable.

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff, PATRICIA DRESBACH, by and through her attorneys, respectfully prays for Judgment to be entered in favor of Plaintiff and against Defendant as follows:

   a.   All actual compensatory damages suffered;

      b.      Statutory damages of $1,000.00;

      c.      Plaintiff's attorneys' fees and costs;

      d.      Any other relief deemed appropriate by this Honorable Court.

> Respectfully submitted,
> **PATRICIA DRESBACH**
>
> By:    s/ David M. Marco
>         Attorney for Plaintiff

Dated: April 11, 2020

David M. Marco
IL Bar No. 6273315/FL Bar No. 125266
SMITHMARCO, P.C.
55 W. Monroe Street, Suite 1200
Chicago, IL 60603
Telephone:  (312) 546-6539
Facsimile:   (888) 418-1277
E-Mail:      dmarco@smithmarco.com